TIMOTHY D. BARROW, ESQ.
Grist Mill Square, Suite 3
148 Main Street
Lebanon, New Jersey  08833
(908) 236-2229
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ASPEN AMERICAN INSURANCE COMPANY,  :

                                               *Document Electronically Filed*

                           Plaintiff,  :  CIVIL ACTION No.

v.

M/V CMA CGM SAMSON, her engines, tackle,  :
appurtenances, etc.,   *in rem,*  and
CMA –CGM S.A., *in personam,*            **VERIFIED COMPLAINT**
                                                    **IN ADMIRALTY**

                           Defendants  :

---

The Plaintiff herein, by its attorney, Timothy D. Barrow, complaining of the above Defendants, verifies upon information and belief as follows:

## THE PARTIES

1. At and during all times hereinafter mentioned, Plaintiff ASPEN AMERICAN INSURANCE COMPANY, is a corporation or other business entity duly organized and existing under and by virtue of the laws of the State of Texas with an office and place of business at 101 Hudson Street, Jersey City, New Jersey 07302.

2. At and during all times hereinafter mentioned, Defendant CMA CGM S.A. is a corporation or other business entity organized and existing under and by virtue of the laws of

another country and does business in the State of New Jersey by and through its general agents, CMA - CGM (America) LLC, which has an office and place of business located at One Meadowlands Plaza, Suite 201, East Rutherford, New Jersey 07073.

3. Plaintiff brings this action as the subrogated insurer of the subject cargo in suit and is entitled to maintain this action and also does so for and on behalf of the shipper, consignee and/or owner of the subject cargo as their interests may appear.

4. Defendant vessel CMA CGM SAMSON is or will be within this District during the pendency of this action as said Defendant vessel is presently scheduled to arrive at Port Elizabeth, New Jersey on or about December 9, 2013, or thereafter.

5. Defendant CMA-CGM S.A. is a vessel operating common carrier and/ or contract carrier of cargo for hire and is otherwise a bailee of cargo entrusted in its care, custody and/or control.

**JURISDICTION AND VENUE**

6. Plaintiff's causes of action are admiralty and maritime claims within the original jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333, and also arises under Federal Rule of Civil Procedure 9(h) as well as this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7. Venue is proper and appropriate for this action pursuant to Federal Rule of Civil Procedure 82 as this Court's admiralty jurisdiction has been invoked by Plaintiff and Defendants herein are subject to personal service and/or the provisions of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.

## PLAINTIFF'S CAUSE(S) OF ACTION AGAINST DEFENDANT CMA-CGM S.A.

8. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 7 of the within Verified Complaint In Admiralty in their entirety, as if set forth herein at length.

9. On or about November 20, 2012, Defendant CMA CGM S.A. issued or caused to be issued bill of lading numbered ID1445493 and/or other receipts for the transport by ocean of 3,000 cartons of chilled pasteurized canned crabmeat at a set reefer container temperature of 0 degrees C that were to be loaded aboard the M/V MERATUS SPIRIT 2 on or about this same date at Makassar, Indonesia for transport to New York and subsequent discharge and delivery from Port Elizabeth, New Jersey, in consideration of certain freight paid and received by said Defendant or persons acting on its behalf.

10. The subject cargo of pasteurized canned crabmeat, more fully described in the said bill of lading, and/or receipts, was delivered to and received in good order and condition with a set temperature of 0 degrees C for reefer container no. CGMU5043055, by the Defendant CMA CGM S.A., or persons acting on its behalf, at Makassar, Indonesia on or before November 20, 2012 and loaded aboard the vessel MERATUS SPIRIT 2 for water transport at which time said Defendant continued to exercised care, control and custody over the subject cargo through to the time of discharge and delivery in New Jersey.

11. Thereafter the vessel MERATUS SPIRIT 2 departed Makassar on or about November 20, 2012 with the subject cargo aboard and arrived at the port of Jakarta on or about November 22, 2012 and was subsequently reloaded aboard the vessel CMA CGM KAILAS on or before December 3, 2012 for water transport to Tanjung Pelepas, Malaysia whereby the subject cargo arrived on or about December 8, 2012. After being discharged in Tanjung Pelepas from the vessel CMA CGM KAILAS, the subject cargo was then loaded aboard the Defendant vessel CMA CGM SAMSON on or before December 9, 2012 for ocean transportation from Tanjung Pelepas to the U.S. port of discharge of New York where said Defendant vessel arrived

at Port Elizabeth, New Jersey on or about January 3, 2013. Thereafter, Defendant CMA CGM S.A. or those acting on its behalf or at said Defendant's direction caused the subject cargo to be discharged on or about January 4, 2013 and delivered same on or about January 7, 2013 from the Port Elizabeth terminal whereby it was transported by truck and received by Plaintiff's insured designated cold storage facility in Mullica Hill, New Jersey the same or next day.

12.   Upon review of the temperature recording data from three (3) temperature recording devices placed within the subject container's cargo stow and/or carton(s), it was determined by Plaintiff's insured that the shipment had been subjected to continuous freezing temperatures for days well below the set point of 0 degrees C resulting in damages and quality degradation to same that was jointly inspected and observed on January 16, 2013 by Plaintiff's surveyor, Defendant's surveyor, and Plaintiff insured's quality control personnel.

13.   The sustained lower recorded freezing temperatures within the subject container and its stowed cargo constitutes temperature abuse of the crab meat product that made it unacceptable for sale as originally intended as prime market product due to its damage and degraded condition which resulted in it being salvaged at reduced values.

14.   The damages sustained to the subject shipment and the otherwise unsound condition of the subject cargo gives rise to a maritime lien enforceable against Defendants and/or their property interests.

15.   Plaintiff and its insured have duly performed all duties and obligations on their part to be performed.

## COUNT I – BREACH OF CONTRACT

16.   Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 15 of the within Verified Complaint in their entirety as if set forth herein at length.

17. Defendant's failure to transport and deliver the subject container and cargos to destination in the same good order, quantity and condition as received was at Makassar was caused by the Defendant and/or its sub-contractors', agents', and/or servants' breaches of contract owed to the shipper, consignee and/or owner of said cargos as carrier of same that resulted from their conduct or omissions to properly receive, store, load, stow, lash, carry, transport, discharge, deliver and/or care for the subject cargo.

18. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of $145,764.54.

## COUNT II – BREACH OF WARRANTY

19. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 15 of the within Verified Complaint in their entirety as if set forth herein at length.

20. Defendant CMA-CGM S.A.'s failure to transport and deliver the subject container and cargos to destination in the same good order, quantity and condition as received was at Makassar was caused by the said Defendant and/or its sub-contractors', agents', and/or servants' breaches of warranty of workman-like service and/or performance owed to the shipper, consignee and/or owner of said cargos as carrier of same that resulted from their conduct or omissions to properly receive, store, load, stow, lash, carry, transport, discharge, deliver and/or care for the subject cargo.

21. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of

$145,764.54.

## COUNT III – NEGLIGENCE

22. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 15 of the within Verified Complaint in their entirety as if set forth herein at length.

23. As carrier, Defendant CMA-CGM S.A. and its sub-contractors, agents, and/or servants owed duties of care to the shipper, consignee and/or cargo owner upon receipt of same and thereafter while the cargo was in their care, custody and/or control including storage, loading, stowage, lashing, carriage, transport, discharge and delivery.

24. The failure to transport and deliver the subject containerized cargos in the same good order, quantity and condition as received is a breach of Defendant CMA-CGM S.A.'s duties and obligations of care as carrier and was the proximate cause of the loss and damage sustained by Plaintiff and/or its insured.

25. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of $145,764.54.

## COUNT IV – BREACH OF BAILMENT

26. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 15 of the within Verified Complaint in their entirety as if set forth herein at length.

27. Defendant CMA-CGM S.A. took possession and exercised care, custody and control of the subject container and cargos at Makassar, Indonesia and thereafter which constituted a bailment of same.

28. Defendant CMA-CGM S.A.'s failure to transport and deliver the entrusted subject cargos to destination and return possession, care, custody and/or control of said cargos to their owners/bailors constituted a breach of bailment and was a violation of its duties and obligations as bailee.

29. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of $145,764.54.

## PLAINTIFF'S CAUSE(S) OF ACTION AGAINST DEFENDANT VESSEL CMA CGM SAMSON

30. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 1 through 15 of the within Verified Complaint In Admiralty in their entirety, as if set forth herein at length.

31. The Defendant Vessel having received the subject cargo on board for discharge and delivery at New York – Port Elizabeth, New Jersey ratified any and all legal duties and obligations owed with respect to the subject shipment to deliver the subject cargo in the same good order, quantity and condition as received at Makassar.

## COUNT I – BREACH OF CONTRACT

32. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 30 and 31 through of the within Verified Complaint in their entirety as if set forth herein at length.

33. Defendant Vessel's failure to transport and deliver the subject container and cargos to destination in the same good order, quantity and condition as received was at Makassar was caused by the Defendant and/or Defendants' sub-contractors', agents', and/or servants' breaches of contract owed to the shipper, consignee and/or owner of said cargos as carrier of same that resulted from their conduct or omissions to properly receive, store, load, stow, lash, carry, transport, discharge, deliver and/or care for the subject cargo.

34. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of $145,764.54.

## COUNT II – BREACH OF WARRANTY

35. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 30 and 31 of the within Verified Complaint in their entirety as if set forth herein at length.

36. Defendants' failure to transport and deliver the subject container and cargos to destination in the same good order, quantity and condition as received was at Makassar was caused by the said Defendants and/or Defendants' sub-contractors', agents', and/or servants' breaches of warranty of workman-like service and/or performance owed to the shipper, consignee and/or owner of said cargos as carrier of same that resulted from their conduct or omissions to properly receive, store, load, stow, lash, carry, transport, discharge, deliver and/or care for the subject cargo.

37. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of $145,764.54.

## COUNT III – NEGLIGENCE

38. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 30 and 31 of the within Verified Complaint in their entirety as if set forth herein at length.

39. Defendants and Defendants' sub-contractors, agents, and/or servants owed duties of care to the shipper, consignee and/or cargo owner upon receipt of same and thereafter while the cargo was in their care, custody and/or control including storage, loading, stowage, lashing, carriage, transport, discharge and delivery.

40. The failure to transport and deliver the subject containerized cargos in the same good order, quantity and condition as received is a breach of Defendants' duties and obligations of care as carriers and was the proximate cause of the loss and damage sustained by Plaintiff and/or its insured.

41. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of $145,764.54.

## COUNT IV – BREACH OF BAILMENT

42. Plaintiff repeats and realleges the allegations set forth in paragraphs numbered 30 and 31 of the within Verified Complaint in their entirety as if set forth herein at length.

43. Defendants took possession and exercised care, custody and control of the subject container and cargos at Makassar, Indonesia and thereafter which constituted a bailment of same.

44. Defendants' failure to transport and deliver the entrusted subject cargos to destination and return possession, care, custody and/or control of said cargos to their owners/bailors constituted a breach of bailment and was a violation of its duties and obligations as bailee.

45. By reason of the premises, Plaintiff has sustained damages as nearly as same can estimated, no part of which has been paid although duly demanded, in the amount of $145,764.54.

WHEREFORE, Plaintiff demands:

1. That process and warrant for a maritime arrest, attachment and/or garnishment according to the rules and practices of this Court, in causes of admiralty and maritime jurisdiction *in rem*, may issue against the Defendant Vessel and that all persons having or claiming an interest therein may be cited to appear and answer, the matters aforesaid upon application for same by Plaintiff;

2. That process in due form of law according to the practice of this Court may issue against the named Defendants;

3. That if any of the Defendants cannot be found within this District, that all of their property within this District, as shall be described in a subsequent affidavit, be attached in the sum set forth in this Verified Complaint In Admiralty pursuant to the rules and practices of this Court pertaining to maritime attachment and/or garnishment, with interests and costs;

4. That a decree and judgment may be entered in favor of Plaintiff against the Defendants individually, jointly, or severally for the amount of Plaintiff's total damages pleaded herein or to be established at trial, together with pre-judgment and post-judgment interest and

taxable costs;  and


5. That this Court will grant the Plaintiff such other and further relief as may be just and proper.

s/ Timothy D. Barrow  
TIMOTHY D. BARROW  
Attorney for Plaintiff

Dated: November 20, 2013  
       Lebanon, New Jersey

## ATTORNEY VERIFICATION/CERTIFICATION

I, TIMOTHY D. BARROW, an Attorney at Law of the State of New Jersey and a Member of the Bar of this Court verify, certify, and say:

I am the attorney for the Plaintiff herein; I have read the foregoing Verified Complaint In Admiralty and know the contents thereof; and that the same is true to my knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true.

The reason this Verification/Certification is made by undersigned counsel and not by Plaintiff is that Plaintiff's corporate officers and/or managers familiar with this matter are not now present within this District. In light of these circumstances, I have been authorized by Plaintiff to make this Verification on their behalf.

The sources of my information and the grounds for my belief as to those matters stated in the Verified Complaint In Admiralty, to be alleged on information and belief, are documents and records in my file and communications with my client and its representatives.

I hereby verify and certify that the foregoing statements made by me are true. I am aware that if any of these statements made by me are willfully false, I am subject to contempt of Court.

                                              s/ Timothy D. Barrow
                                              TIMOTHY D. BARROW
                                              Attorney at Law – State of New Jersey

DATED: November 20, 2013
               Lebanon, New Jersey